UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

GERRY HOOVER,                          )
                                       )
            Petitioner,                )
                                       )
v.                                     )          No.: 4:13-CV-23-HSM-SKL
                                       )
HENRY STEWART, Warden,                 )
                                       )
            Respondent.                )

## MEMORANDUM OPINION

In 2005, a jury in the Coffee County, Tennessee Circuit Court convicted Gerry Hoover ("Petitioner") of three counts of child rape [Doc. 1 p. 1]. For these offenses, Petitioner received an effective sentence of forty-eight (48) years' imprisonment [*Id.*]. Petitioner now brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that judgment [*Id.*].

Warden Henry Stewart ("Respondent") has filed a response to the petition, arguing that relief is not warranted with respect to Petitioner's claims and, in support of those arguments, he has filed copies of the state court record [Docs. 14, 15, Addenda Nos. 1-4]. Petitioner has replied to the response, insisting that, for various reasons and contrary to the Warden's position, his claims entitle him to issuance of the writ [Doc. 18].

For the following reasons, this petition will be **DENIED**.

## I.   PROCEDURAL HISTORY

On March 25, 2007, Petitioner's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"). *State v. Hoover*, No. M2007-01595-CCA-R3-

CD, 2008 WL 768928 (Tenn. Crim. App. Mar. 25, 2008), *perm. app. denied* (Tenn. 2008). On September 29, 2008, the Tennessee Supreme Court (hereinafter "TSC") denied Petitioner's application for permission to appeal. *Id.*

Petitioner then challenged his convictions by filing a petition for post-conviction relief. *Hoover v. State*, No. M2011–02413–CCA–R3–PC, 2012 WL 4841608 (Tenn. Crim. App. Oct. 10, 2012), *perm. app. denied* (Tenn. 2013). After holding an evidentiary hearing on the sole ineffective assistance claim advanced for consideration, the state post-conviction court denied the petition and the TCCA affirmed the denial. *Id.* at *1. On January 4, 2013, Petitioner's request for permission to appeal was denied by the TSC. *Id.*

There followed this timely § 2254 habeas corpus application, advancing two claims of ineffective assistance [Doc. 1].

## II.    FACTUAL BACKGROUND

The following factual recitation is taken from the TCCA's opinion on direct review summarizing the evidence presented at trial.

> B.H.,[1] a nine year old girl who lived with her two brothers, her sister, and her mother in Iowa stated that, when her family still lived in Tennessee, the [Petitioner], who was her stepfather, raped her several times. The first rape she testified about happened in 2003, when her family went fishing at Normandy Lake. B.H. was seven years old. While the rest of her family fished at another part of the lake around dusk, she was alone with the Defendant, and "he started hurting [her] on [her] privates." B.H. illustrated to the court where he touched her by touching the genital area on the doll she brought to trial. She said that after touching her for a few minutes, he climbed on top of her and "stuck his penis in [her]." B.H. said she did not know what his penis was when he did this. She said, "it felt weird, and [she] was really scared, and it hurt [her] feelings really bad[ly]." She explained that she did not yell "because [she] was scared." B.H. said that later, when they were home, she heard

---

[1] The TCCA used initials to refer to the child victim to protect her privacy. Initials also were used to refer to the victim's 13-year old sister.

the Defendant threaten, "if he wasn't going to get any from [her] mom, he will find someone else," but said she did not know what that meant.

B.H. then described a second rape to the jury. She said that one day, after school and after her mother left for the nightshift, the Defendant "stuck his tongue down by ... [her] pee hole .... and then he stuck his penis in [her]." She clarified that he "stuck his penis in [her] pee hole and in [her] poop hole." B.H. said she did not tell anyone because "[she] was scared of what people might think of [her]." She said the Defendant also "stuck his tongue in [her] mouth."

B.H. testified that the Defendant then raped her a third time, when she went to the store with him to get candy. She said he took her on a detour to Powers Bridge and "he started touching [her] on [her] privates." She said "he touched [her] on [her] privates with [her] clothes on, and then he started pulling down [her] pants and stuff, and then he started touching [her] and sticking his penis in [her]." She said the Defendant then made her touch his penis with her hand. B.H. said that, when they left the bridge area, the Defendant began calling her mom and dad bad names, and when she told him not to, he "slapped [her] across the face." B.H. said that after she got home, she told her mom what the Defendant had been doing to her. She was eight years old at this point.

On cross-examination, B.H. said that she now lives in Iowa with her siblings and mother. She said the Defendant would spank all the kids in the family. B.H. clarified that her biological father is the Defendant's brother. B.H. said she did not initially tell her mom about the rapes because she was afraid. On redirect-examination, B.H. said "that night" of the Normandy [L]ake incident, the Defendant "touched [her] with his hand in [her] privates with [her] pants down." He also "stuck his tongue in [her] mouth and stuck his penis in [her]."

A.N., the thirteen year old sister of B.H., testified that she saw the Defendant laying on top of B.H. at Normandy Lake. A.N. said it was getting dark at the lake, and she had run out of worms, so she went to find the Defendant. She saw him on top of her sister, and she could not tell what they were doing, but could tell from her sister's body positioning that the Defendant was hurting her. A.N. testified that she watched them for five to ten minutes, and then left the scene. She said she did not tell anyone about what she saw because the Defendant told her "to keep it a secret, and ... if [she] didn't] keep it a secret, he [would] come after [her] and kill [her]."

3

On cross-examination, A.N. stated she never heard B.H. scream or
say anything while the Defendant was on top of her.

. . .

The Defendant admitted to smacking B.H., but explained that he
did it because she called him a "son of a bitch." He also stated that
when he slapped B.H., her mother was not working and had not
been working for awhile. The Defendant denied all sexual contact
with B.H. and thought B.H. accused him as retaliation for the
smack.

*State v. Hoover*, 2008 WL 768928, at *1-3. On this and other evidence, including medical proof,

presented at trial, the jury convicted Petitioner of three counts of rape of a child.

## III.   DISCUSSION

The Warden maintains, in his answer, that the first of Petitioner's two claims of

ineffective was adjudicated by the state courts, resulting in a decision which must remain

undisturbed, in keeping with the deferential review standards set forth in 28 U.S.C. § 2254. This

is so, Respondent argues, because that decision is neither contrary to nor an unreasonable

application of well-established Supreme Court precedent, nor an unreasonable determination of

the facts presented to the state court. As to the second such claim, Respondent asserts that it has

been procedurally defaulted and that federal review is barred, despite Petitioner's reliance on the

rule announced in *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), to support his claim of cause.

The Court agrees with Respondent Warden concerning Petitioner's entitlement to habeas

corpus relief.

### A.  Governing Legal Rules on Ineffective Assistance of Counsel Claims

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const.

amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably

effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When considering *Strickland*'s second prong, a petitioner must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal

5

quotation marks omitted).

Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Yet, the core inquiry remains "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Finally, a petitioner asserting claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). "[W]hen a federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

**A. The Adjudicated Claim**

Petitioner asserts that trial counsel gave him ineffective assistance by failing to file a motion for a severance of the three counts of child rape, for which he was indicted and subsequently convicted. This claim was offered and rejected during Petitioner's state post-conviction proceedings.

**1. Standard of Review**

Adjudicated claims are evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411; *see also Harrington*, 562 U.S. at 102 (explaining that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

The AEDPA standard is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). AEDPA prevents the use of "federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). Furthermore, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has pointedly observed, "AEDPA prevents defendants—and

federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Id.* at 781.

### 2. Failure to Seek a Severance

Petitioner argues, in his petition and accompanying brief, that the evidence was stronger in one case and weaker in the others and that the offenses were not part of a common scheme or plan, were not of a distinctive design (though the evidence was distinctive), were different in character (except that they were all sex offenses), and occurred in different geographical locations and at different times of the day or night [Doc. 1 p. 5; Doc. 2 pp. 7-9].

Petitioner also claims that severance, under state law, requires that a trial court find that the offenses to be joined at trial are part of a common plan or scheme; that the evidence establishes that his offenses were not of this nature; and that counsel's failure to file a motion to sever deprived the trial court of an opportunity to hold a hearing as whether the offenses were properly joined for a single trial or whether the admissibility of evidence as to one offense may have a prejudicial effect as to his guilt on the other offenses [*Id.* at 10]. Indeed, Petitioner asserts that, when the jury found him guilty in one case, it necessarily found him guilty in the remaining cases by concluding that "if he committed this offense[], he must have committed the other two as well" [*Id.* at 7]. Petitioner argues that, but for trial counsel's error in failing to move for a severance, there is a reasonable probability that the outcome would have been different.

Petitioner carried this claim to the TCCA, which pointed to counsel's testimony at the post-conviction hearing, where counsel had detailed the circumstances surrounding the severance issue. *Hoover*, 2012 WL 4841608, at *1. During the hearing, counsel stated that, because the three counts of child rape occurred on three separate dates in three different locations, he considered filing a motion to sever. *Id.* at *1. However, upon performing an investigation into

the charges, counsel discovered that Petitioner had slapped the victim, determined that evidence regarding the "slapping" incident probably would not be admissible at separate trials, but would be admissible at one trial, and, believing that the incident might allow the jury to infer that the victim was retaliating against Petitioner by making the charges of rape, made a strategic decision not to seek a severance. *Id.*

Counsel also testified that his concern about Petitioner's ability to withstand multiple trials and multiple cross-examinations was another consideration which factored into his decision. *Id.* Counsel stated that he did not think that Petitioner would understand the severance issue, given Petitioner's difficulty in apprehending simple concepts. *Id.* Even so, counsel averred that he discussed the facts of the three separate incidents with Petitioner. *Id.* Counsel also considered that, at separate trials, Petitioner would have more exposure to a lengthier total sentence and that he hoped to secure concurrent sentences for his client by trying the cases together. *Id.*

Assistant trial counsel also testified at the post-conviction hearing, acknowledging that she agreed with trial counsel's assessment that it was more beneficial to try the cases together, especially given the defense of retaliation. *Id.* at *2. Assistant trial counsel also noted that, at separate trials, more limitations would be placed on cross-examination of the victim as to discrepancies in the victim's allegations and that she concluded that presenting all the information in the same trial presented a stronger defense. *Id.*

In reviewing the claim, the TCCA observed that the post-conviction court accredited the trial counsel's testimony that, as part of their defense strategy, they decided to limit their client's exposure and to attempt to discredit the victim's testimony and reveal that she and other witnesses had motives to lie. *Id.* The post-conviction court, finding that counsel made a

9

"rational and logical" decision not to seek a severance, denied relief. *Id.*

The TCCA then made its own findings, including that "[t]he overwhelming evidence at the post-conviction hearing showed that the determination of trial counsel to not seek a severance was a strategic decision made after careful reasoning" and that counsel "testified as to the benefits of a joint trial." *Id.* at *4. Observing that a reasonable trial strategy is not to be second-guessed, the TCCA likewise denied relief. *Id.*

In considering this claim, the TCCA cited to *Strickland*—the seminal case for determining whether counsel has rendered constitutionally ineffective assistance, as well as to *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)—a case which holds that a petitioner who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test. Thus, the state court's decision on this claim was not "contrary to" clearly established federal law as determined by the Supreme Court.

The next step is to determine whether the TCCA's decision was an unreasonable application of *Strickland*. The Court must be mindful, in making this determination that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and that [s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 689, 690. This Court likewise understands that its evaluation of the reasonableness of the TCCA's decision on the deficient-performance aspect of this ineffective-assistance claim is "'doubly deferential' [a standard] . . . that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen*, 563 U.S. at 190). The TCCA detailed the rationale upon which was based counsel's decision not to move for a

severance and also pointed out that counsel's' testimony in that regard had been accredited.

The Court agrees with the TCCA that Petitioner cannot show any deficient performance by counsel with respect to the severance issue and finds that its decision was reasonable under *Strickland*'s guidelines.

The TCCA did not address whether there existed any resulting prejudice, but an insufficient showing of deficient performance obviates the need to determine whether there is any ensuing prejudice. *Strickland*, 466 U.S. at 788 (finding "no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one").

The TCCA's adjudication of this ineffective assistance claim was entirely reasonable under *Strickland*'s guidelines. Therefore, the writ will not issue with respect to this claim.

### C.    Procedurally Defaulted Claim

Petitioner maintains that trial counsel gave him ineffective assistance by advising him to waive his ex post facto protection to be sentenced under the law in effect when he committed his offenses and to agree to be sentenced under new sentencing law. Petitioner claims that the new law permitted the trial judge to apply enhancement factors, without finding beyond a reasonable doubt the factors which applied, and that this resulted in a much longer sentence than he could have received had he been sentenced under the old law. Petitioner asserts that counsel's advice was objectively unreasonable and that he was prejudiced by the lengthier sentence he must serve.

Petitioner concedes that he failed to raise this claim in his post-conviction proceedings, but he ascribes this failure to his post-conviction attorney, who omitted it from Petitioner's amended post-conviction petition.

11

### 1. Law of Procedural Default

A state prisoner who petitions for habeas corpus relief must exhaust his available state court remedies by presenting his federal habeas claim first to the state courts for consideration. 28 U.S.C. § 2254(b)(1). As Respondent correctly points out, Petitioner's ineffective assistance claim would be subject to a procedural default, given the one-year statute of limitations and the one-petition rule which apply to post-conviction petitions in Tennessee, *see* Tenn. Code Ann. § 40-30-102(a) and (c), were he to return to the state courts with his claim now. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (holding that a petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default.)

A procedural default forecloses federal habeas review, unless a petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* at 732. Cause can be shown by the existence of "some objective factor external to the defense" such as interference by government officials, where the factual or legal basis for a claim was not reasonably available, or ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Absent cause and prejudice, a petitioner who shows that he is actually innocent can overcome the procedural hurdle as well. *Murray*, 477 U.S. at 496.

Though as a general rule, the ineffective assistance of post-conviction counsel does not excuse a state procedural default, *Coleman*, 501 U.S. at 752 (finding that "[t]here is no constitutional right to an attorney in state post-conviction proceedings [and that] [c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings") there is one limited equitable exception, as announced in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and expanded in *Trevino v. Thaler*, 133 S. Ct. 1311 (2013).[2]

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. at 1918 (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21).

Thus, *Martinez* holds that, under some circumstances, post-conviction counsel's ineffective assistance excuses a procedural default of a substantial claim that trial counsel gave ineffective assistance *Martinez*, 132 S. Ct. at 1320. The exception in *Martinez* is narrow: "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Martinez,* 132 S.Ct. at 1319. The Supreme Court reasoned that, if claims of ineffective assistance of trial counsel were not presented in the first

---

[2] The rule set forth in *Martinez*, as expanded by *Trevino*, applies to Tennessee cases. *See Sutton v. Carpente*r, 745 F.3d 787, 795–96 (6th Cir. 2014).

state court proceeding in which such claims could be raised, without the *Martinez* exception, "no court will review the prisoner's claims." *Id*. at 1316.

To establish that his post-conviction counsel gave him ineffective assistance, a petitioner must show a deficient performance on the part of post-conviction counsel and that prejudice ensued from post-conviction counsel's deficient performance. However, the "actual prejudice" requirement of *Coleman* and the prejudice requirement of *Strickland* (in reviewing post-conviction counsel's representation) overlap such that

> in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial" enough to satisfy the "actual prejudice" prong of *Coleman*. If not, because the "cause and prejudice" standard is conjunctive rather than disjunctive, the reviewing court would have no need consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel.

*Thorne v. Hollway*, No. 3:14-CV-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014).

Thus, to be successful under *Martinez*, a petitioner must show a substantial underlying claim of ineffective assistance of trial counsel; he makes this showing by demonstrating that his claim has "some merit." *Id*. at 1318–19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003), for the standards for determining whether a certificate of appealability should issue); *see also Trevino*, 133 S. Ct. at 1918. By way of contrast, an insubstantial claim "does not have any merit or . . . is wholly without factual support." Id. at 1319. The Court turns now to whether Petitioner had a strong argument that his trial counsel was ineffective. *See Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) ("The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel,

14

is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective."), *overruled on other grounds by McKinney v. Ryan*, No. 09-99018, 2015 WL 9466506 (9th Cir. Dec. 29, 2015)

### 2. Whether the Underlying Ineffective-Assistance Claim is Substantial

A court appraising whether a claim of ineffective assistance of trial counsel is substantial need not undertake "a full consideration" of the legal and factual basis of the claim, but instead performs an "overview and general assessment" of the claim. *Miller-El*, 537 U.S. at 336. Therefore, whether the necessary showing has been made can be determined by a cursory application of the *Strickland* test.

Here, an overview and assessment of Petitioner's underlying claim of ineffective assistance of trial counsel discloses that it is not a substantial one. To reiterate, Petitioner asserts that that trial counsel rendered ineffective assistance by misadvising him to waive his right to be sentenced under the law applicable to offenses committed in 2003 and to consent to be sentenced under the 2005 amended sentencing law.

In 2003, when Petitioner committed his offenses, sentencing in Tennessee was governed by the 1989 Sentencing Reform Act. Under that sentencing law, a judge could find, by a preponderance of evidence, specific statutory enhancement factors and could increase a defendant's presumptive minimum sentence based on those factors. In 2005, the Tennessee legislature amended state sentencing law to comply with the Sixth Amendment, as set forth in *Apprendi* and its progeny,[3] to remove mandatory presumptive sentences, to create a range of

---

[3] *Apprendi v. New Jersey*, 530 U.S. 466 (2000), held that the Sixth Amendment requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. *Blakely v. Washington*, 542 U.S. 961 (2004), one of a line of cases following *Apprendi*, explained that the statutory maximum "is not the maximum sentence a

punishment for each crime, to provide that enhancement factors were advisory, and to give a judge discretion to fix a sentence within that range: "In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines." Tenn. Code Ann. § 40-35-210(c). *See Cunningham v. California*, 549 U.S. 270, 294 n.18 (2007) (citing Tenn. Code Ann. § 40–35–210(c) as a sentencing law "which everyone agrees, encounters no Sixth Amendment shoal") (internal quotation marks and citation omitted).

As Respondent points out, the record reflects that Petitioner signed a detailed waiver of his right to be sentenced under the prior law. In the waiver, Petitioner acknowledged that counsel had explained the prior sentencing law and the implications of being sentenced under the new law, that counsel had discussed the differences between those two sentencing schemes, and that Petitioner understood that there was no guarantee that he would receive a lesser sentence by waiving his constitutional ex post facto protection and agreeing to be sentenced under the new sentencing law [Doc. 15, Addendum 1, vol. 1 pp. 98-108].

In counsel's Amended Sentencing Memorandum and in co-counsel's argument at sentencing, as Respondent suggests, counsel set out their reasoning for advising their client to waive his right to be sentenced under the old sentencing law and to elect to be sentenced under the 2005 amended sentencing regime [Doc. 1, vol. 1, pp. 79-86; *Id.,* vol. 2, p. 21]. One reason given by counsel was that enhancement factors under the 2005 amended sentencing law were advisory and not mandatory (as in the old law), and another was that a presumptive sentence was fifteen years, which was the lower end of the sentencing range of fifteen to twenty-five years for

judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-304. Thus, permitting judicially-found facts (except for a prior conviction enhancement) to increase a mandatory presumptive sentence violates a defendant's Sixth Amendment rights.

Petitioner's Class A felony offense of child rape, and not a twenty-year mandatory presumptive sentence for Class A felonies under the old sentencing scheme.

As observed earlier in this opinion, counsel's strategic choices, which are backed up by a "thorough investigation of law and facts relevant to plausible options[,] are virtually unchallengeable." *Strickland*, 466 U.S at 690. Petitioner has not shown that his counsel did not research the new sentencing law; that counsel did not compare whether the application of the 2005 amended sentencing law would be more favorable to their client than the 1989 Sentencing Act; that counsel's research was not thorough, or that counsel's strategic choice, under the circumstances existing at the time of the waiver, was not reasonable. *See Nichols v. Heidle*, 725 F.3d 516, 543 (6th Cir. 2013); *Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing that the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002)).

Therefore, Petitioner has not made a cursory showing of deficient performance on the part of trial counsel and a "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see also Landrum v. Anderson*, No. 14-3591, 2016 WL 556743, at *4 (6th Cir. Feb. 12, 2016) (finding that a claim of ineffective assistance of trial counsel was not substantial, under the *Martinez* framework, where a petitioner could not satisfy both *Strickland* components).

Absent a showing of a deficient performance on the part of counsel in advising Petitioner to waive his right to be sentenced under the old law, Petitioner has no substantial claim of ineffective assistance of trial counsel. Therefore, because Petitioner's underlying claim of ineffective assistance of trial counsel lacks merit *Martinez* does not save this claim from a

finding of procedural default. Federal habeas corpus review is now barred on Petitioner's claim of ineffective assistance of trial counsel.

## IV. CONCLUSION

For the above reasons, this pro se state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed the two claims and in view of the law upon which is based the dismissal on the merits of the first claim and the procedural basis upon which is based the dismissal of one claim (including the *Martinez* analysis), reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER**.

_____/s/ Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

19